# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY W. WITZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 2:18-cv-00035** |
| **v.** | ) | **Chief Judge Crenshaw** |
| | ) | **Magistrate Judge Brown** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge

## REPORT AND RECOMMENDATION

Pending before the court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 15), to which Defendant Commissioner of Social Security ("Commissioner") filed a response (Docket Entry No. 17). Upon consideration of the parties' filings and the transcript of the administrative record (Docket Entry No. 11)[1] and for the reasons given herein, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment be **GRANTED** and that the decision of the Commissioner be **REVERSED and REMANDED** for further administrative proceedings consistent with this Report and Recommendation.

## I. PROCEDURAL HISTORY

Plaintiff, Gregory Witz, filed an application for Disability Insurance Benefits ("DIB") under Title II and an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on December 15, 2014 and July 28, 2015, respectively, alleging disability onset as of April 2, 2013, due to spinal injury/ stenosis and arm/hand pain. (Tr. 15, 68, 78, 106). Plaintiff's

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

claims were denied at the initial level on May 27, 2015, and on reconsideration on February 11, 2016. (Tr. 15, 107, 115, 122). Plaintiff subsequently requested *de novo* review of his case by an administrative law judge ("ALJ"). (Tr. 15, 129, 131). The ALJ heard the case on March 14, 2017, when Plaintiff appeared with counsel and gave testimony. (Tr. 15, 32-59). Testimony was also received by a vocational expert. (Tr. 60-65). At the conclusion of the hearing, the matter was taken under advisement until September 15, 2017, when the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 12-23). That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since April 2, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairment: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and osteoarthritis of the bilateral shoulders (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He is limited to sitting six hours in an eight-hour workday, and standing and/or walking six hours in an eight-hour workday, however, he is limited to no more than 30 minutes of continuous sitting, standing, or walking. He can frequently handle, finger, and reach bilaterally. He can occasionally balance, stoop, kneel, crouch, and/or crawl.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

2

7.    The claimant was born on August 4, 1964 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from April 2, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17, 18, 22, 23).

On March 15, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering that decision the final decision of the Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  REVIEW OF THE RECORD

The following summary of the medical record is taken from the ALJ's decision:

The claimant was injured on-the-job in April 2013. He injured his neck and bilateral shoulder. (See Hearing Transcript). X-rays of the claimant's cervical spine, dated April 2013, revealed severe spondylitic change at C3. (See Exhibit lF). Magnetic resonance imaging (MRI) of the claimant's cervical spine, dated August 2013,

revealed marked spondylosis[2] with multi-level disc space height narrowing and degeneration. (See Exhibit lF). The claimant received medication management, physical therapy, chiropractic care, and epidural steroid injections in the months following his initial injury. (See Exhibits l F, 2F, and 4F). A follow-up MRI, dated October 2013, revealed the same results. (See Exhibit 1F). He was given permanent restrictions to light duty, up to 30 pounds, as of January 20, 2014. (See Exhibit lF).

As of September 2014, the claimant reported doing fine with his medication regimen, consisting of hydrocodone, as he was awaiting a referral to a pain management clinic. He was noted to have weakness at C5 and C6, upon physical examination. (See Exhibit 3F). The claimant was noted to have a five percent whole body impairment and to be at maximum medical improvement, as of September 3, 2014. (See Exhibit 13F).

In September 2014, the claimant began receiving pain management for his cervical condition. Upon his initial evaluation, he had tenderness at C8. He was treated monthly until July 2015, and his condition was noted as improved with pain level at a six on a scale of 10. He was then referred for treatment on a bimonthly basis. (See Exhibits 6F, 7F, and 9F). He also received some pain management treatment from his primary care provider on an overlapping basis. (See Exhibit 8F).

The claimant received more chiropractic care in 2015 and 2016. (See Exhibit 18F). An X-ray of the claimant's lumbar spine, dated February 2016, revealed moderate to marked spondylosis with multi-level disc space height narrowing and low-grade lumbar facet arthropathy. (See Exhibit 22F). X-ray of the claimant's cervical spine, also dated February 2016, revealed marked spondylosis with multi-level disc space height narrowing. (See Exhibit 22F). X-rays of the claimant's left shoulder, also dated February 2016, revealed arthritic changes in the AC joint and the bony glenoid. (See Exhibit 22F). A[n] MRI of the claimant's left shoulder, dated November 2016, revealed high-grade bursal surface tear of the posterior fibers of the supraspinatus tendon. (See Exhibit 12F).

The claimant's current medical records show that he continues to receive pain management from both a pain clinic and his primary care provider, and that he has been advised that surgical options for his conditions are limited. He is prescribed Percocet, along with various other medications, both narcotic and non-narcotic. (See Exhibits 20F and 23F).

(Tr. 19-20).

---

[2]Spondylosis is ankylosis (the immobility and consolidation of a joint due to disease, injury, or surgical procedure) of a vertebral joint or degenerative spinal changes due to osteoarthritis. *Dorland's Illustrated Medical Dictionary* 94, 1754 (32nd ed. 2012).

4

### III. CONCLUSIONS OF LAW

### A. Standard of Review

Review of the Commissioner's disability decision is narrowly limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the right legal standards in reaching the decision. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence requires 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the Commissioner's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387 (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 773 (citations omitted). However, where an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be

justified based upon the record." *Miller,* 811 F.3d at 833 (citation and internal quotation marks omitted).

## B. Administrative Proceedings

The claimant has the ultimate burden of establishing his entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("[T]he claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The Commissioner applies a five-step inquiry to determine whether an individual is disabled within the meaning of the Social Security Act, as described by the Sixth Circuit as follows:

> (1) a claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings; (2) a claimant who does not have a severe impairment will not be found to be disabled; (3) a finding of disability will be made without consideration of vocational factors if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four; (4) a claimant who can perform work that he has done in the past will not be found to be disabled; and (5) if a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the

burden through step four of proving the existence and severity of the limitations his impairments cause and the fact that he cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . .'" *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The Social Security Administration can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). The grids otherwise only function as a guide to the disability determination. *Wright*, 321 F.3d at 615-16; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert ("VE") testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (citing SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the Commissioner must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

7

## C. Claims of Error

### 1. The ALJ erred in rejecting the medical assessment of Plaintiff's treating physician, Dr. James Cates.

Plaintiff argues that the ALJ improperly gave "little weight" to the opinion of Dr. James Cates, Plaintiff's treating physician. (Docket Entry No. 16, at 21). Plaintiff argues that Dr. Cates's opinion is consistent with the record as a whole and that in giving Dr. Cates's opinion little weight the ALJ improperly relied on older medical records and records that only related to Plaintiff's work injury. *Id*. In response, Defendant contends that the ALJ properly determined that Dr. Cates's opinion was due little weight because the medical record supported fewer limitations and that the ALJ provided meaningful review by clearly and concisely stating the reasons as to why Dr. Cates's opinion was due little weight. (Docket Entry No. 17, at 4, 6).

Social Security regulations address three classifications of medical sources: treating sources; examining but non-treating sources; and non-examining sources. 20 C.F.R. §§ 404. 1527, 416.927; 20 C.F.R. §§ 404.1502, 416.902.[3, 4]  A treating source has a history of medical treatment and an

---

[3]The Act and implementing regulations regarding DIB (contained in Title II of the Act and 20 C.F.R. Part 404 of the regulations) and SSI (contained in Title XVI of the Act and 20 C.F.R. Part 416 of the regulations) are substantially identical. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (noting that the Title II and the Title XVI definition of "disability" is "verbatim the same" and explaining that "[f]or simplicity sake, we will refer only to the Title II provisions, but our analysis applies equally to Title XVI."). The Magistrate Judge cites to the regulations interchangeably.

[4]On January 18, 2017, the Social Security Agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017). *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules became effective March 27, 2017, 20 C.F.R. §§ 404.1527 & 416.927, setting forth the rules for evaluating opinion evidence, both medical and nonmedical, for claims filed before that date. Thus, the Magistrate Judge applies these regulations, as well as any other regulations, in effect at the time of Plaintiff's filings on December 15, 2014 and July 28, 2015. *See* 20 C.F.R. §§ 404.614, 416.325 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee).

ongoing treatment relationship with the plaintiff consistent with accepted medical practice. *Id.* §§ 404.1527, 416.927. An examining non-treating source has examined the plaintiff, but does not have an ongoing treatment relationship. *Id.* A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the plaintiff, but provides a medical or other opinion based upon medical and treatment records. *Id.* The opinion of an examining non-treating source is given greater weight than that from a non-examining source, and an opinion from a treating source is afforded greater weight than an examining non-treating source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (2)). "[W]hen the physician is a specialist with respect to the medical condition at issue," the specialist's "opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527([c])(5)).

"A treating physician's opinion is normally entitled to substantial deference, but the ALJ is not bound by that opinion. The treating physician's opinion must be supported by sufficient medical data." *Jones*, 336 F.3d at 477 (citation omitted). Thus, "[i]f the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Id.* The ALJ must give treating-source opinions "'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). If the ALJ does not accord the treating physician's opinion "controlling weight," then the ALJ must weigh the opinion based on a number of factors in 20 C.F.R. §§ 404.1527(c), 416.927(c), including: "the length of the treatment relationship and the frequency of

9

examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. "However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing SSR 96-2p, 1996 WL 374188, at *4). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017).

The regulations provide that an ALJ must provide "good reasons" for discounting the weight of a treating source opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "Those good reasons must be 'supported by the evidence in the  case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley*, 581 F.3d at 406-07 (quoting SSR 96-2p, 1996 WL 374188, at *5). The Sixth Circuit has explained that "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243. Failure to comply with the "good reasons" requirement, however, may be deemed harmless error. *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). "If an ALJ rejects a treating physician's opinion but gives no reasons for doing so, it is difficult for a reviewing court to conduct its own analysis and make a judgment as to what the ALJ's reasons would have been-

unless . . . the treating physician's opinion is 'so patently deficient that the Commissioner could not possibly credit it.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009)) (quoting *Wilson*, 378 F.3d at 547); *Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 423 (6th Cir. 2013).

On February 16, 2017, Dr. Cates completed a medical source statement and opined that Plaintiff could lift less than ten (10) pounds occasionally and less than ten (10) pounds frequently due to supraspinatus tear in the left shoulder and severe cervical arthritis with nerve impingement on the right and left; stand and/or walk less than two (2) hours in an eight (8) hour workday; and sit about four (4) hours in an eight (8) hour workday with frequent breaks to lie down. (Tr. 701-02). Pushing and pulling were limited in the upper and lower extremities due to severe decrease in the range of motion and degenerative changes in the spine, and Plaintiff would need to alternate sitting and standing to relieve pain or discomfort. (Tr. 702). Dr. Cates opined that Plaintiff was incapable of low stress jobs because of chronic pain and would need to take frequent unscheduled breaks. (Tr. 705). Dr. Cates further opined that Plaintiff should never climb, balance, kneel, crouch, or crawl and that he could occasionally reach in all directions, handle, finger, and feel. (Tr. 705, 704). Environmental restrictions included avoiding all exposure to vibration and hazards (machinery, heights . . .); avoiding moderate exposure to extreme cold and heat, noise, and dust; and avoiding concentrated exposure to humidity and wetness, fumes, odors, dust, gases, perfumes, solvents/cleaners, soldering fluxes, cigarette smoke and chemicals. (Tr. 703). The VE testified that there would be no work available for Plaintiff considering these restrictions. (Tr. 64-65).

The ALJ determined that Dr. Cates's opinion should be given little weight, stating:

> I assign little weight to this opinion, as the claimant's medical record better supports
> a limitation to light work with the applicable additional restrictions as listed in the

11

residual functional capacity, given that he was released to light work over four years ago, his pain level is well-controlled, and his maximum medical improvement includes only a five percent whole body impairment. (See Exhibits 1F and 13F).

(Tr. 20).

Plaintiff argues that the ALJ's finding does not take into consideration the fact that after Dr. Allen's September 3, 2014 opinion, Plaintiff had significant testing and treatment by Dr. Cates and other medical providers. (Docket Entry No. 16, at 19-20). Plaintiff also argues that while Dr. Allen treated Plaintiff only for his work-related injury, Dr. Cates treated Plaintiff for all of his conditions. *Id*. at 20. Defendant contends that the issue is not whether some other finding could have been reached based upon the same record, but it is whether the ALJ's conclusion was based upon substantial evidence and whether the ALJ properly followed the regulations in doing so. (Docket Entry No. 17, at 6).

The opinion of Dr. Cates, a treating source, is entitled to controlling weight unless Dr. Cates's opinion is not supported by "'medically acceptable clinical and laboratory diagnostic techniques'" or is inconsistent with the other substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d at 376 (citation omitted). Even if Dr. Cates's opinion is not entitled to controlling weight, there remains a rebuttable presumption that it is entitled to great deference and a requirement that good reasons be given if the opinion is discounted. *Rogers*, 486 F.3d at 242; 20 C.F.R. § 404.1527(c)(2). Here, the ALJ did not give good reasons for giving little weight to Dr. Cates's assessment of Plaintiff's limitations as the ALJ failed to provide sufficiently specific reasons for discounting Dr. Cates's opinion.

The ALJ generally states that Plaintiff's "medical record better supports a limitation to light work," referencing Dr. Allen giving Plaintiff permanent restrictions to light duty, up to 30 pounds,

12

as of January 20, 2014, and on September 3, 2014, Dr. Allen opining that Plaintiff had a five percent whole body impairment and was at maximum medical improvement and that Plaintiff's pain level was well-controlled. (Tr. 20). However, the medical record also shows that a series of August 20, 2013 MRIs of Plaintiff's cervical spine revealed evidence of Forestier disease[5] with multilevel disc height narrowing and spondylosis which was moderate to severe. (Tr. 381). An impression of another MRI revealed marked spondylosis with evidence of Forestier disease and multilevel disc space height narrowing and degeneration; varying degrees of canal encroachment mostly due to spondylitic ridging, though at several levels there was possible disc/spur complex; and mild canal stenosis with no significant cord impingement and varying degrees of lateral recess and foraminal narrowing. (Tr. 384, 500). On December 11, 2013, Dr. Allen evaluated Plaintiff and noted cervical strain superimposed upon quite extensive degenerative cervical spine disease and noted that complicating the situation was that the strain was superimposed upon a background of quite impressive degenerative cervical and lumbar spine disease. (Tr. 396).

On February 4, 2014, Dr. Cates found that Plaintiff had decreased strength bilaterally at C5 and weakness on the right at C8, decreased flexion and rotation of his cervical spine, paracervical spasm, decreased sensation over the C5 innervation, and decreased sensation of the 4th and 5th digits of his right hand. (Tr. 559-60). Dr. Cates assessed chronic neck pain and radiculopathy.[6] (Tr.

---

[5] Forestier's disease, also known as diffuse idiopathic skeletal hyperostosis ("DISH")," is a bony hardening of ligaments in areas where they attach to the spine. Symptoms include stiffness, pain, loss of range of motion and difficulty swallowing or a hoarse voice. https://www.mayoclinic.org/diseases-conditions/diffuse-idiopathic-skeletal-hyperostosis/symptoms-causes/syc-20371661 (last viewed March 1, 2019).

[6] Radiculopathy is disease of the nerve roots, such as from inflammation or impingement by a tumor or a bony spur. *Dorland's* at 1571.

13

560).  Dr. Cates cautioned Plaintiff with lifting, pushing and pulling over 15 pounds.  (Tr. 560).  On August 20, 2014, Dr. Allen noted that after three epidural steroid injections Plaintiff was "better but not well."  (Tr. 403-04).  On September 9, 2014, an x-ray of the C-spine revealed Plaintiff's C-spine to be grossly abnormal; Plaintiff had lipping at C3, C4, and C5 with spur formation anteriorly and a spur formation at C3, C4, C5, C6, and C7 inferiorly and anteriorly; Plaintiff had bridging of the gap; a C4-C5, C5-C6, and C6-C7 posteriorly neural foraminal space seemed to be maintained; and minimal facet joint disease.  (Tr. 416).  Plaintiff's posterior pharyngeal wall seemed to be compromised at the level of C5-C6 and also C4-C5, and Plaintiff had difficulty swallowing.  (Tr. 416).

On February 2, 2016, Plaintiff presented to Dr. Cates complaining of back and neck pain and difficulty in walking.  (Tr. 712).  Plaintiff's examination showed that he ambulated unassisted with difficulty, he had left leg positive straight leg raise at 30 degrees, and was assessed with "[b]ack pain, lumbar, chronic as deteriorated."  (Tr. 714).  Plaintiff suffered a fall in February 2016.  (Tr. 770, 777).  The ALJ noted that February 12, 2016 x-rays of Plaintiff's lumbar and cervical spine showed moderate to marked spondylosis with multi-level disc space height narrowing and low-grade lumbar facet arthropathy, as well as marked spondylosis with multi-level disc space height narrowing in the cervical spine.  (Tr. 20).  However, the ALJ did not note that Dr. Josue Montanez, the reading physician, commented that there was progression in spondylosis.  (Tr. 779).  X-rays of Plaintiff's left shoulder also showed arthritic changes in the AC joint and the bony glenoid.  (Tr. 20, 782).

On October 12, 2016, Plaintiff was seen at Comprehensive Pain Specialists and reported that he had been falling and losing feeling in his legs.  (Tr. 792).  On November 3, 2016, Plaintiff

14

presented to Dr. Cates, complaining about pain in his left shoulder and loss of sensation in his legs and stated that he had fallen several times while walking upstairs. (Tr. 721). Dr. Cates ordered an MRI of Plaintiff's lumbar spine and left shoulder. (Tr. 721-23). The ALJ noted that a November 18, 2016 MRI of Plaintiff's left shoulder revealed high-grade bursal surface tear of the posterior fibers of the supraspinatus tendon. (Tr. 20, 610, 730). Specifically, the MRI showed high grade bursal surface tear of the posterior fibers of the supraspinatus tendons, measuring 9 mm in width and 90% thickness; no tendon retraction; adjacent tendinosis of the other portions of the supraspinatus tendon; internal degeneration of the superior glenoid labrum; inflammation of the ligaments at the rotator cuff suggesting an element of capsulitis; and impingement on the supraspinatus tendon at the external outlet. (Tr. 610-11). On November 22, 2016, Dr. Cates's assessment of the MRI was, in part, non-traumatic partial left rotator cuff tear and impingement syndrome of left shoulder. (Tr. 727). Dr. Cates commented that Plaintiff needed to avoid lifting anything with his left arm. (Tr. 727).

On February 16, 2017, Plaintiff presented to Dr. Cates and reported falling three times because he could not feel his leg. (Tr. 735). In completing the medical source statement, Dr. Cates cited supraspinatus tear in the left shoulder and severe cervical arthritis with nerve impingement on the right and left as the bases for Plaintiff's lifting restrictions; severe degenerative disc disease bilaterally for Plaintiff's standing/walking restrictions; Plaintiff having to lie down frequently during the day for Plaintiff's sitting restrictions; and severe decrease in the range of motion and strength in neck and upper extremities, severe degenerative changes in the spine, and MRIs and C-spine x-ray for Plaintiff's pushing and pulling restrictions. (Tr. 701-02).

15

The Magistrate Judge concludes that the ALJ's statement that Dr. Cates's opinion was given little weight "as the claimant's medical record better supports a limitation to light work" is too general and conclusory in light of the above cited medical record, much of which was not referenced in the ALJ's own recitation of the medical record. As a result, the ALJ's summary of the medical record, (Tr. 19-20), does not provide specific enough details to support the ALJ's conclusion and therefore fails the regulations' "good reasons" requirement. As explained by the Sixth Circuit,

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544-45 (citations omitted).

Moreover, in discounting Dr. Cates's opinion, the ALJ relied heavily on Dr. Allen's opinion, although Dr. Allen rendered his opinions in 2014 and did not have Plaintiff's subsequent medical records, including records pertaining to Plaintiff's shoulder and numbness in his leg. The ALJ did not cite specific inconsistencies between the medical evidence of Dr. Cates and that of Dr. Allen or any other corroborating medical evidence as bases for giving little weight to the opinion of Dr. Cates.

To be sure, in its brief Defendant cites to portions of the medical record in support of the ALJ's decision. (Docket Entry No. 17, at 6-7). For example, Defendant cites that Plaintiff was seen by CPS and "received 'significant' analgesia (i.e. pain relief) from the current treatment regimen (Tr. 784)." *Id.* at 7. However, the ALJ did not specifically cite to this statement, and the recitation of the medical record is not particularly detailed. The ALJ's decision only provides a modicum of

detail and does not address with any specificity as to the inconsistencies between medical providers. A court "'may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'" *Berryhill v. Shalala*, 4 F.3d 993, No. 92-5876, 1993 WL 361792, at \*6 (6th Cir. Sept. 16, 1993) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)); *see Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 847 (N.D. Ohio 2016) (citing *Berryhill*, the district court concluded, "[T]he ALJ did not cite this evidence as a basis for rejecting Dr. Smarty's opinion. Rather, this explanation appears for the first time in the briefing now before the Court. . . . . Therefore, because the reasons now being provided were not articulated by the ALJ, they are rejected."). The Magistrate Judge also notes that the ALJ did not address any of the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c).

Thus, the Magistrate Judge finds that while there may be substantial evidence to support the ALJ, the ALJ failed to follow the procedural requirements of providing sufficiently specific reasons for discounting the opinion of a treating physician and therefore the ALJ's decision should be reversed for lack of substantial evidence. *See Wilson*, 378 F.3d at 544 ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants . . . ."); *Rogers*, 486 F.3d at 243 ("Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.");

17

*Gayheart*, 710 F.3d at 377 ("Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion."); *Blakley*, 581 F.3d at 410 ("[S]ubstantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527([c])(2) as harmless error.").

In *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171 (6thCir. 1994), the Sixth Circuit addressed the issue of "what a district court should do once a determination is made that an ALJ erroneously applied the regulations and the [Commissioner]'s denial of benefits therefore must be reversed." *Id.* at 173. The Court concluded that "when the [Commissioner] misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration." *Id.* at 175-76.[7] The Court explained, "[u]nder sentence four, the court makes a final judgment, affirming, reversing, or modifying the [Commissioner's] decision and may order the [Commissioner] to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the [Commissioner's] misapplication of the regulations in the first place." *Id.* at 175. However,

---

[7]Sentence four of 42 U.S.C. § 405(g) states as follows:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

[i]f a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. . . . A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking.

*Id.* at 176.

Based upon the record, a judicial award of benefits would not be proper as neither the proof of disability is overwhelming nor is the proof of disability strong while the evidence to the contrary is lacking. Therefore, the Court concludes that this action should be remanded for the ALJ's failure to articulate "good reasons" for giving little weight to a treating physician's opinion. *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) ("We have stated that '[w]e do not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.'") (citations omitted); *Wilson*, 378 F.3d at 545 ("[C]ourts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as § 1527([c])(2) requires.") *(citing Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).

## 2. The ALJ erred in rejecting the medical opinion Dr. Terrence Leveck, the examining consultative physician.

Plaintiff contends that the ALJ erred in giving little weight to the opinion of Dr. Terrence Leveck, an examining consultative physician, whose conclusions were similar to Dr. Cates's in terms of Plaintiff's ability to lift. (Docket Entry No. 16, at 21). Defendant asserts that the ALJ properly rejected Dr. Leveck's opinion for the same reasons that he rejected Dr. Cates's opinion. (Docket Entry No. 17, at 10).

19

Dr. Leveck opined that Plaintiff could lift and carry 5 pounds continuously, 10 pounds frequently, and 15 pounds occasionally, and that Plaintiff could sit, stand and/or walk for eight hours in an eight-hour workday. (Tr. 21). The ALJ assigned little weight to this opinion for the same reasons given for Dr. Cates's opinion, stating that Plaintiff's "medical record better supports a limitation to light work with the applicable additional restrictions as listed in the residual functional capacity, given that he was released to light work over four years ago, his pain level is well-controlled, and his maximum medical improvement includes only a five percent whole body impairment." (Tr. 21).

While all medical opinions are evaluated as discussed in 20 C.F.R. § 404.1527, opinions by consulting or non-treating doctors need not be evaluated in accordance with the treating physician rules outlined by the Sixth Circuit. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527 and *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). It is the function of the ALJ to resolve the conflicts between the medical opinions. *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that [the claimant] now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence."). However, in light of the Magistrate Judge's conclusion to remand this action because the ALJ failed to comply with the treating physician rule, the Magistrate Judge declines to address this issue as the ALJ's re-evaluation and analysis of the medical record on remand may impact the ALJ's findings on this issue. *Kennedy v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 937, 957 n.3 (E.D. Tenn. 2013).

**3. The ALJ did not appropriately consider Plaintiff's reaching restrictions.**

20

Plaintiff asserts that the non-examining State agency consultants, to whom the ALJ gave great weight, opined that Plaintiff was limited to overhead reaching bilaterally and that Dr. Cates opined that Plaintiff's reaching was limited to occasionally. Plaintiff contends that the ALJ therefore erred in limiting Plaintiff's reaching to frequently. (Docket Entry No. 16, at 22). Defendant contends that "[g]reater limitations were properly rejected as part of the rejection of Dr. Cates' opinion, as that doctor had limited Plaintiff's ability to reach," and that "the ALJ properly determined that Dr. Cates' opinion was only due a little weight." (Docket Entry No. 17, at 10).

As this issue relates to Dr. Cates's opinion, the Magistrate Judge declines to address this issue as the ALJ's re-evaluation and analysis of Dr. Cates's opinion and the medical record on remand may impact the ALJ's findings on this issue.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 15) be **GRANTED**, and the Commissioner's decision be **REVERSED and REMANDED** for further administrative proceedings consistent with this Report and Recommendation. The parties have fourteen (14) days of being served with a copy of this Report and Recommendation to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this 12th day of March, 2019.

/s/     Joe  B.  Brown
JOE B. BROWN
United States Magistrate Judge